UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELVON HAMMOND,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>JOE A. LIZARRAGA, Warden,<br><br>　　　　　　Respondent. | No. 2:17-cv-2189 TLN KJN P<br><br>FINDINGS & RECOMMENDATIONS |

I. Introduction

    Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his July 26, 2013 conviction for forcible lewd act upon a child under 14 years of age (Cal. Penal Code § 288(b)(1)). Petitioner was sentenced to life without parole in state prison. Petitioner claims that the mandatory imposition of life without parole under Penal Code §§ 667.61 (a) and (d) violates the Eighth Amendment of the Constitution as cruel and unusual punishment. After careful review of the record, this court concludes that the petition should be denied.

II. Procedural History

    On March 19, 2014, a jury found petitioner guilty of having committed a forcible lewd act upon a child under 14 years of age (Cal. Penal Code § 288(b)(1)), an attempt of the same offense (Cal. Penal Code §§ 288(b)(1), 664), and found true a prior conviction of lewd and lascivious

1

conduct (Cal. Penal Code § 288(a)). (ECF 25-1 at 5.) On August 15, 2014, the trial court sentenced petitioner to life without parole on the first count comprising the completed offense, and stayed the consecutive determinate sentence of 13 years (the four-year aggravated term, doubled based on the prior conviction as a strike offense and five-year-serious-felony enhancement) for the second count comprising the attempt. (Id.)

On May 4, 2016, the Court of Appeal affirmed the judgment on direct appeal. (Id.) On July 13, 2016, the California Supreme Court denied review. (Id.)

On September 22, 2017, petitioner filed the instant petition for writ of habeas corpus. (ECF No. 1.)

III. Facts[1]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> **A. Procedural History**
>
> The Solano County District Attorney's Office charged Hammond with one count of forcible lewd act upon a child in violation of Penal Code section 288, subdivision (b)(1) [FN 1] (count one) and one count of attempted forcible lewd act upon a child in violation of sections 664 and 288, subdivision (b)(1) (count two). The information alleged enhancements for a prior serious felony (§ 667.61), a qualifying prior sex offense, and a prior strike based upon Hammond's conviction for a violation of section 288, subdivision (a) in 2005. (§ 667.61, subds. (a)(1), (j)(1), (d)).
>
> [FN 1: All subsequent statutory references are to the Penal Code.]
>
> **B. Jury Trial**
>
> Hammond was tried before a jury and found guilty of both counts, and the jury found true Hammond's prior conviction for a lewd act upon a child. The victim, M.G. (age 10 at the time), was riding on a scooter from her house when Hammond approached her on Civic Center Drive. Hammond told her to stop, and she stopped because she thought maybe she had dropped something. Hammond rode toward her on a bike. He got off the bike and "grabbed [her] foot and put it in his pants." She was wearing flip flop sandals and Hammond

---

[1] The facts are taken from the opinion of the California Court of Appeal for the First Appellate District in People v. Hammond, No. A142892 (May 4, 2016), a copy of which was lodged by respondent as Exhibit 6 on February 21, 2018.

2

removed the flip flop from one of her feet. There was no one around them and M.G. felt scared. Hammond rubbed her foot on his penis. She pulled her foot back and tried to ride away on her scooter, but Hammond tried to grab her foot again and force it back down his pants. She "fought it off" and rode home. When she got home, she went to her room and cried. She then told her brother, who informed their mother.

Hammond was wearing an electronic monitoring device at the time of the incident with M.G. The GPS signal from the device showed his location within 50 feet. He was at Utah Street and Civic Center Drive at the time M.G. claimed to have been assaulted.

Hammond carried out a similar assault in 2004 on A.M., who was 12 years old at the time. A.M. was sitting alone in the waiting room at Northbay Hospital in Fairfield when Hammond approached her. A.M. was seated watching television and Hammond sat down next to her. Hammond kneeled down in front of her, pulled his pants down to expose his penis, and grabbed her leg. He removed A.M.'s flip flop sandal and began rubbing his penis on the bottom of her foot. A.M. stated Hammond's penis felt hard. He then began rubbing it on her ankle as well. A.M. began to yell and cry. She kicked Hammond and tried to push him away. As she was screaming and pushing him away, he "was using all his force" to continue rubbing his penis on her. When a security guard came into the room, Hammond pulled up his pants and went to the elevator. Hammond was apprehended shortly thereafter.

### C. Sentencing

The law provides that any person convicted of a sex offense upon a child victim who is under 14 years old who has a prior similar offense, "shall be punished by imprisonment in the state prison for life without the possibility of parole." (§ 667.61, subd. (j)(1).)

Hammond's trial counsel argued section 667.61 was unconstitutional as applied to Hammond because it constituted cruel and unusual punishment. Counsel stressed the limited touching involved in both offenses, that no weapons were used, and the victims were not injured. Counsel argued that Hammond suffered with numerous mental defects since childhood, causing him great difficulty in school. Hammond also had "borderline intellectual functioning."

The prosecutor responded that Hammond was not so lacking in mental abilities that he could not perform in life. Hammond had participated in and completed vocational programs in prison. The prosecution also referenced Hammond's parole violations including the fact that shortly before the incident with M.G., Hammond's parole agent found child pornography on Hammond's phone. Among others sites, he had viewed several Web sites showing young girls with adult men fondling their feet, as well as adult men having sex with young girls. [FN 2] The prosecution argued that Hammond could not meet the "considerable burden" to demonstrate disproportionality. Hammond's sentence was mandatory because the jury found the allegation that Hammond suffered a prior conviction

3

> for a violation of section 288, subdivision (a) to be true, and this mandated a sentence of life without the possibility of parole.
>
>> [FN 2: Respondent included this information in its sentencing memorandum filed in the trial court. Hammond did not object before the trial court and does not object to respondent's references to this information in its brief on appeal.]
>
> The presentence report documented the trauma to the victim, who stated she was unwilling to leave home unless she was accompanied by an adult. M.G. lived near a library and used to ride her bike there, but after the incident she was too afraid and would only go there with her mother. M.G. had become cautious in public and if she saw someone who resembled Hammond, she would become visibly uncomfortable.
>
> The court found the victim to be particularly vulnerable because she was a child riding her scooter alone in an area where she felt safe near her home. Hammond used his position as an adult authority figure to cause her to stop. He pulled her from the scooter and forced her foot into his pants and onto his penis. The court found "the trauma he's done to her is really immeasurable. We have evidence that the child that this was done ten years ago to is still traumatized, and we have evidence that this child is traumatized." The court further noted when Hammond approached M.G., he was on parole for the same activity.
>
> The court found the mandatory sentence was not unconstitutional. The court stated it was a matter for the Legislature that created the sentencing scheme. Hammond had managed to be "pretty much self sufficient in his life," and he had completed courses in prison. The court found there were not sufficient facts in the record to find the punishment was cruel and unusual.
>
> The court sentenced Hammond to determinate terms of eight years on count one (stayed) and eight years on count two with an additional five-year enhancement, for a total determinate term of 13 years. The court sentenced Hammond under section 667.61, subdivisions (d) and (j)(1) to an indeterminate term of life without the possibility of parole on count one.
>
> The court ordered restitution in the amount of $10,000. After discussing sentencing credits and sex offender registration, the court ordered Hammond to pay a court security surcharge of $40 and a criminal conviction fee of $30. Counsel then objected "on the basis he has no ability to pay."

People v. Hammond, No. A142892, 2016 WL 2609693, at *1-3 (Cal. Ct. App. May 4, 2016).

IV. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28

U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 4 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

§ 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze

just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V. Discussion

Petitioner argues California Penal Code §§ 667.61 (a) and (d) violate the Eighth Amendment of the United States Constitution as cruel and unusual punishment and that the trial court abused its discretion by imposing an excessive punishment of life without parole which is disproportionate to the petitioner's crime. (ECF No. 1 at 5.)[3]

Petitioner did not renew his claim that he suffers from severe mental impairments. However, the undersigned has reviewed the record, including petitioner's sealed mental health records, and finds that the state court's determination that petitioner did not suffer mental

---

[3] Although petitioner identifies two claims in his petition, his challenges arise only under the Eighth Amendment of the U.S. Constitution. Petitioner's challenge under the California Constitution fails to state a cognizable federal habeas claim. Federal habeas corpus is not available for alleged error in the interpretation or application of state law. Estelle, 502 U.S. at 67-68. Federal courts will not review an interpretation by a state court of its own laws unless that interpretation is clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution. Mullaney v. Wilbur, 421 U.S. 684, 691 n.11 (1975); Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993) (federal courts are "bound by a state court's construction of its own penal statutes"); Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989) (a federal habeas court must defer to the state court's construction of its own penal code). The decision of the California Court of Appeal is not untenable and does not amount to a subterfuge to avoid federal review. Accordingly, petitioner is not entitled to habeas relief on his claim that his sentence violates the California Constitution.

8

impairments or intellectual limitations which would make the sentence disproportionate is well-supported.  Although petitioner suffers language delays, limited interpersonal skills, and slow processing, he has not been diagnosed as mentally retarded and has presented no evidence that his intellectual functioning is similar to an intellectually disabled adult.  The state court noted that petitioner successfully completed automotive repair vocational courses in prison and adult school.  In addition, petitioner's prior reliance on cases addressing juvenile liability is unavailing because petitioner was 31 at the time of the instant offense.

The only claim to be addressed is petitioner's Eighth Amendment proportionality claim.

*Legal Standards for Eighth Amendment Proportionality Claims*

A criminal sentence that is disproportionate to the conviction offense may violate the Eighth Amendment.  Solem v. Helm, 463 U.S. 277, 284 (1983).  Outside capital cases, the Eighth Amendment requires no strict proportionality between crime and sentence but rather forbids only extreme sentences that are "grossly disproportionate" to the crime.  Harmelin v. Michigan 501 U.S. 957, 957 (1991) (holding that a life-without-parole sentence was not grossly disproportionate to a felony offense of possession of 672 grams of cocaine for a first-time offender); Andrade, 538 U.S. at 63.

The Supreme Court has applied the Eighth Amendment proportionality principle to life-without-parole sentences for non-homicide crimes very few times, reaching varying results.  Norris v. Morgan, 622 F.3d 1276, 1291 (9th Cir. 2010); See Graham v. Florida, 560 U.S. 48, 48 (2011) (holding that life-without-parole sentences for juveniles offenders who did not commit homicide are categorically barred by the Eighth Amendment); Harmelin, 501 U.S. at 995; Solem, 463 U.S. at 278 (holding that a life-without-parole sentence was grossly disproportionate to a minor felony offense of uttering a $100 "no account" check for an offender with a criminal history of several nonviolent felonies).  However, in 2010, the Supreme Court adopted a three-factor approach for lower courts to apply the proportionality principle in noncapital sentences:

> A court must begin by comparing the gravity of the offense and the severity of the sentence.  '[I]n the rare case in which [this] threshold comparison…leads to an inference of gross disproportionality' the court should compare the defendant's sentence with the sentences

9

> received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.

Graham, 560 U.S. at 60 (quoting Harmelin, 501 U.S. at 1005).

What indicates gross disproportionality remains unclear, but should be informed by objective factors and will be found only in the "exceedingly rare" and "extreme" case. Andrade 538 U.S. at 73. "Courts must objectively measure the severity of the defendant's sentence in light of the crimes he committed." Norris, 622 F.3d at 1287. This is measured by the harm caused to the victim or society, the culpability of the offender, and the magnitude of the crime. Solem, 463 U.S. at 277. There are no objective factors which distinguish between varying sentences of imprisonment; the length of sentences is a matter of legislative directive. Rummel v. Estelle, 445 U.S. 263, 274 (life imprisonment for three petty thefts less than $230 does not violate Eighth Amendment).

*California Court of Appeal Decision*

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the First Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> Cruel and Unusual Punishment Under the United States Constitution
>
> Eighth Amendment disproportionality is very narrow. (Ewing, supra, 538 U.S. at p. 20.) Successful grossly disproportionate challenges are "'exceedingly rare'" and appear only in an "'extreme'" case. (Lockyer v. Andrade (2003) 538 U.S. 63, 73.)
>
> A proportionality analysis requires consideration of the gravity of the offense and the harshness of the penalty as well as sentences in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions. (Solem v. Helm (1983) 463 U.S. 277, 292.) "But it is only in the rare case where a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality that the second and third criteria come into play." (People v. Meeks, supra, 123 Cal.App.4th at p. 707, quoting Harmelin v. Michigan (1991) 501 U.S. 957, 1005 (conc. opn. of Kennedy, J.).)
>
> In Ewing, Gary Ewing was sentenced to a term of 25 years to life under California's Three Strikes law for stealing three golf clubs priced at $399 each, as theft with prior convictions for theft and burglary. (Ewing, supra, 538 U.S. at pp. 18, 20.) The United States Supreme Court applied the principles of gross disproportionality and

10

deference to legislative policy choices to conclude that Ewing's sentence of 25 years to life "is not grossly disproportionate and therefore does not violate the Eighth Amendment's prohibition on cruel and unusual punishments." (Id. at pp. 30–31.) Similarly, Andrade was sentenced under California's Three Strikes law to two consecutive terms of 25 years to life on two counts of petty theft with prior theft-related convictions. (Lockyer v. Andrade, supra, 538 U.S. at p. 68.) On habeas corpus review, the United States Supreme Court rejected Andrade's claim that his sentence violated the prohibition against cruel and unusual punishment, holding "it was not an unreasonable application of our clearly established law for the California Court of Appeal to affirm Andrade's sentence of two consecutive terms of 25 years to life in prison." (Id. at p. 77.)

Hammond's sentence as a recidivist sex offender is not "grossly disproportionate" to his crime of a lewd act upon a child under age 14. As the Supreme Court stated in the context of the Three Strikes law: "When the California Legislature enacted the three strikes law, it made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime. Nothing in the Eighth Amendment prohibits California from making that choice." (Ewing, supra, 538 U.S. at p. 25.)

In considering the gravity of the offense, the Ewing court looked not only to Ewing's current felony, but also to his criminal history. The court stated "[a]ny other approach would fail to accord proper deference to the policy that judgments find expression in the legislature's choice of sanctions. In imposing a three strikes sentence, the State's interest is not merely punishing the offense of conviction ... '[i]t is in addition the interest ... in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.'" (Ewing, supra, 538 U.S. at p. 29, quoting Rummel v. Estelle (1980) 445 U.S. 263, 276.)

Hammond's crime certainly is more serious than the theft of golf clubs in Ewing or other nonviolent offenses. (See People v. Mantanez, supra, 98 Cal.App.4th at pp. 364–365 [term of 25 years to life under the Three Strikes law for a nonviolent offense does not constitute cruel and unusual punishment].) It is also more serious than the simple failure to register as a sex offender (In re Coley, supra, 55 Cal.4th at p. 530 [imposition of a 25–year–to–life sentence for failing to register as sex offender does not constitute cruel and unusual punishment in violation of the federal Constitution]), or possession of drugs (Harmelin v. Michigan, supra, 501 U.S. at p. 961 [life without possibility of parole sentence for possession of 672 grams of cocaine not cruel and unusual].) It is significant that Hammond was convicted of the same offense against a young girl previously. Given the seriousness of the current offense and his prior offense, his sentence is not grossly disproportionate and does not present the "exceedingly rare" case of cruel and unusual punishment under the Eighth Amendment.

> A lengthy prison sentence for a repeat offender, pursuant to a recidivist statute, does not constitute cruel and unusual punishment. (Harmelin v. Michigan, supra, 501 U.S. at p. 996; Rummel v. Estelle, supra, 445 U.S. 263.)

Hammond, 2016 WL 2609693, at *8-9.

*Analysis*

Petitioner incorrectly claims that California Penal Code §§ 667.61 (a) and (d) violate the Eighth Amendment of the United States Constitution. (ECF No. 1 at 5.) Further, petitioner's claim that the trial court abused its discretion by imposing an excessive punishment of life without parole is invalid. (Id.)

The instant case is similar to Norris, where a sex offender in Washington received life without parole after being charged with recidivism of first degree child molestation for touching a five-year-old girl between the legs "for a few seconds" over clothing. Norris, 622 F.3d at 1290. Washington's two strike policy is analogous to § 667.61, sentencing repeat sex offenders to life without parole. Id. "The two strikes law's purposes are the same as that of the three strikes statute: incapacitation and deterrence of a repeat offender." Id. at 1280. The Ninth Circuit rested on the legislative intent of the statute coupled with the prisoner's prior similar conviction, determining that although life without parole is the second most severe sentence a person can receive, the conviction met the classifications under the two strikes regulation and the prisoner's Eighth Amendment rights were not violated by a sentence of life without parole. Id. at 1295.

Here, petitioner was sentenced to life without parole based on two sexual touching instances committed ten-years apart, a harsh sentence. However, as in Norris, the severity of petitioner's sentence was not grossly disproportionate to the crimes he committed. Petitioner's current conviction is for lewd acts with a child under fourteen, which by its very description, involves causing harm to a child. Sexual crimes are not passive crimes, but crimes where "the impact on the lives of victims is extraordinarily severe." Cacoperdo v. Demosthenes, 37 F.3d 504, 508 (9th Cir. 1994); see Stogner v. California, 539 U.S. 607 (2003) (Kennedy, J., dissenting) ("When a child molester commits his offense, he is aware the harm will plague the victim for a lifetime.").

12

The second incident occurred while petitioner was on parole from his previous sexual offense and wearing an ankle monitor as a required parole condition. Petitioner stopped a ten-year-old girl in an isolated parking lot, grabbed her foot, forced her foot down his pants, and rubbed it against his genitals. (ECF No. 26-2 at 63.) The victim was able to break free, but the damage was done. (Id.) Petitioner's behavior was arguably more egregious than that of Norris who touched a girl for "a few seconds" on the outside of her clothing in a crowded location. Norris, 622 F.3d at 1290.

Because petitioner is a recidivist sex offender, "in weighing the gravity of [his] offense, we must place on the scales not only his current felony," but also his criminal history. Ewing, 538 U.S. at 29. Petitioner's current sex offense mirrored his previous sex offense. Petitioner's first sexual conviction was for a forcible lewd act upon on a child under the age of fourteen. During that incident, petitioner forcefully rubbed the foot of a twelve-year-old girl against his genitals in a hospital waiting room. Hammond, 2016 WL 2609693, at *8. Thus, on more than one occasion, petitioner sought out unsupervised, young, female victims in isolated locations. He approached them, forced their feet down the waistline of his pants, and rubbed his penis on the girls' feet.

"A sentence within the limits set by a valid statute may not be overturned on appeal as cruel and unusual punishment unless the sentence is so grossly out of proportion to the severity of the crime as to shock our sense of justice." United States v. Cupa-Guillen, 34 F.3d 860, 864 (9th Cir. 1994). Under §§ 667.61 (a) and (d) life without parole is applied to all repeat sex offenders if their convictions fall within those listed in § 667.61 (c). (Cal. Penal Code § 667.61(c)). Petitioner's convictions are among those listed in § 667.61(c), thus mandating a life without parole. Cal. Penal Code § 667.61(j)(1). The recidivist sex offender statute was created with the intent to keep victims and potential victims safe from those who have a propensity of forcing unwanted sexual behavior on others. People v. Murphy 25 Cal.4th 385, 399 (2001). Petitioner's conduct being less egregious than others who have been charged under this statute does not absolve him of the consequences of his actions.

////

Petitioner's sentence "reflects a rational legislative judgment" that sex offenders who have committed a serious or violent sex offense and who continue to commit such sex offenses must be permanently impeded. Ewing, 538 U.S. at 30 (plurality opinion). This is not "'the rare case in which a threshold comparison of the crime committed and the sentences imposed leads to an inference of gross disproportionality.'" Norris, 622 F.3d at 1296 (quoting Harmelin, 501 U.S. at 1005 (opinion of Kennedy, J.)).

It is also important to look at how other jurisdictions have handled similar situations. Norris is not the only time a court has determined that a life sentence without parole applied to a recidivist sex offender is not a violation of the Eighth Amendment. A Minnesota district court concluded similarly, reasoning that "'the governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle—the precise contours of which are unclear,'" affirming a lower court's decision that sexual based recidivism is grounds for a life sentence without the possibility of parole. Juarez v. Hammer, 2016 WL 8732508 (D. Minn. Mar. 4, 2016) (quoting Andrade, 538 U.S. at 76).

Following a comparison of the gravity of petitioner's offense with the severity of his sentence and a review of sentences received by other offenders in this and other jurisdictions, the undersigned cannot find that this is one of the rare cases where the sentence is grossly disproportionate to the offense. The state court's decision was not contrary to or an unreasonable application of the Eighth Amendment of the Constitution such that the sentence of life without parole for repeat sexual offenses is cruel and unusual punishment.

VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files

14

objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 11, 2018

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/ar/Hamm2189.157